Corey GLOVER, d/b/a Slush Fund Music, Michael Cirincione, d/b/a Cirince Music, Plaintiffs–Appellants,

v.

Dallas L. AUSTIN, Crypton, Inc., d/b/a Crypton Music, Tionne Watkins, Grung Girl Music, Lisa Lopes, Rozanda Thomas, EMI April Music, Inc. EMI Blackwood Music Publishing, Inc., La Face Records, Inc., Arista Records, Inc., BMG Music, a Partnership consisting of BMG Music Group, Inc. and Ariola Eurodisc, Inc. d/b/a BMG Entertainment, Defendants–Appellees.

No. 06–4756–cv.

United States Court of Appeals, Second Circuit.

July 24, 2008.

Oren J. Warshavsky, Troutman Sanders LLP, New York, NY (Kervin Simms,

Simms & Walters, P.C., New York, NY, on the brief), for Plaintiffs–Appellants.

Orin Snyder (Joshua Wilkenfeld, on the brief), Gibson, Dunn & Crutcher LLP, New York, NY, for Defendants–Appellees.

Present: ROSEMARY S. POOLER, PETER W. HALL, Circuit Judges, JOHN GLEESON,[1] District Judge.

## SUMMARY ORDER

Plaintiffs appeal from a summary judgment entered in the United States District Court for the Southern District of New York (Swain, J.) in favor of defendants in a copyright infringement action. The plaintiffs alleged that the defendants' song "Unpretty," which was commercially released in February 1999, infringed on the plaintiffs' rights in their song "Make Up Your Mind," allegedly recorded and submitted to the Defendants on or about August 25, 1998. The district court concluded that the defendants had shown, beyond genuine dispute, that "Unpretty" was created and recorded before the August 25, 1998, date on which the plaintiffs asserted they created "Make up Your Mind." We assume the parties' familiarity with the facts, proceedings below, and specification of issues on appeal.

Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief. *See, e.g., Repp v. Webber,* 132 F.3d 882, 889 (2d Cir.1997). In our review of the district court's decision granting summary judgment, we resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.* However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "conclusory allegations

will not suffice." *Id.* (internal quotation marks omitted). Rather, "a material fact arises only where it can be said that the evidence would allow a reasonable jury to find in favor of the non-moving party." *Id.* at 890.

"Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." *Id.* at 889. "Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating [ (i) ] that the person who composed the defendant[s'] work had access to the copyrighted material and [ (ii) ] that there are similarities between the two works that are probative of copying." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 51 (2d Cir.2003) (internal quotation marks and citations omitted).

There is clearly a genuine issue of material fact concerning this second prong: the plaintiffs have adduced significant evidence of similarities between the two works that are probative of copying. The plaintiffs proffered the expert report of Lawrence Ferrara, Ph.D., a professor and chair of the Department of Music and Performing Arts at New York University, who analyzed and compared "Unpretty" with "Make up Your Mind." Dr. Ferrara found that the songs "share significant and substantial similar elements of original musical expression." Dr. Ferrara highlighted the substantial similarities in the harmony, rhythm, melody, tempo and overall structure of the compositions. Specifically, Dr. Ferrara found that three of the four main harmonies in the songs were identical; their harmonic progressions were "almost identical"; the bass pattern in the chorus of "Make Up Your Mind" was identical to a bass pattern heard twenty-six times

---

1. Honorable John Gleeson, of the United States District Court for the Eastern District of New York, sitting by designation.

throughout "Unpretty"; two musical phrases sung in the chorus of "Make up Your Mind" were "almost identical" to musical phrases sung twice in "Unpretty"; both songs had "significantly similar overall rhythmic thrust, feel and tempo"; and the melody in more than half of "Unpretty" shared significant similarities with the chorus of "Make Up Your Mind." Dr. Ferrara concluded "with a reasonable degree of probability [that] whichever song was created first, the second song was created with reference to and influenced by the first."

The defendants have not submitted any evidence rebutting this expert testimony. Thus, the only issue for purposes of this motion is the first prong: whether the defendants had access to the plaintiffs' song "Make Up Your Mind" before the defendants created all of the allegedly infringing portions of "Unpretty." "There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required." *Jorgensen,* 351 F.3d at 56 (internal quotations omitted). As recounted above, the evidence of probative similarity is strong. The plaintiffs' proof of access is considerably weaker, but, in light of the strength of their evidence of probative similarity, it is sufficient to withstand summary judgment.

There is a significant piece of circumstantial evidence supporting access: the plaintiffs contend that the defendants invited them to create a song for the album on which "Unpretty" appeared and that "Make Up Your Mind" was written for this sole purpose. In her deposition, defendant Tionne Watkins testified that she asked plaintiff Corey Glover to write a song for the upcoming album, but his submission was "too rock and roll." The plaintiffs averred that after the defendants declined to accept a previous submission for the album, the plaintiffs recorded "Make Up

Your Mind" on or about August 25, 1998 and quickly gave a copy of it to an employee of La Face Records, a defendant corporation. The defendants, however, never acknowledged receipt of the allegedly submitted song nor informed the plaintiffs that they would not be using it for the upcoming album. Meanwhile, defendants' business records demonstrated that the defendants continued to work on "Unpretty" well after August 26, 1998. For example, on September 30, 1998, defendants' notes indicate that the defendants were working on a 'recall/redo!!' for "Unpretty." These facts and factual allegations create a genuine issue of material fact with respect to whether Defendants had access to "Make Up Your Mind" before "Unpretty" was entirely completed. *See* Melville B. Nimmer & David Nimmer, 4–13 Nimmer On Copyright § 13.02 (2008) ("[T]he fact that defendant's work was commenced prior to the first possible access to plaintiff's work does not by itself negate the possibility that plaintiff's work was copied, if access occurred prior to completion of defendant's work").

In response, the defendants claimed that they independently created "Unpretty" prior to the creation of "Make Up Your Mind." The defendants submitted significant evidence that the defendants held several recording sessions in early August, 1998, during which the defendants worked on a version of "Unpretty." The defendants claimed that these recordings, completed several weeks before the plaintiffs recorded "Make Up Your Mind," contained all the allegedly infringing elements of "Unpretty." Several witnesses testified that the version recorded during those sessions was substantially similar to the final version. However, for two reasons, we are satisfied that the plaintiffs have nonetheless established that there is a genuine issue of material fact. The first is a credibility matter: every witness who so testi-

fied was either a defendant or someone who has been employed by the defendants. A district court, at the summary judgment stage, may not "accept[ ] only the version of interested witnesses on the question of separate creation." *Repp*, 132 F.3d at 891. Second, there is evidence from which a jury could reasonably infer that the witnesses were simply mistaken in their belief that the version recorded during those early August sessions was substantially similar to the final version. Specifically, company records reveal that a "[f]ully mixed, edited, and unequalized (i.e., ready-for-mastering)" version of "Unpretty" was completed by January 24, 1998 and there was deposition testimony to the effect that multiple versions of all songs were recorded.

The defendants also submitted analog reel tape and MIDI digital recordings allegedly created during these early August sessions. In his deposition, plaintiff Glover conceded that a recording of an analog reel tape, manually dated August 7, 1998, contained nearly all the allegedly infringing elements present in the final version of "Unpretty." However, there is insufficient evidence, for purposes of prevailing on summary judgment, to establish that the manually-dated reel tape was in fact recorded on August 7, 1998. More promisingly, the defendants produced a MIDI computer file, with a computer-generated date of August 5, 1998, that contained some computerized bass line and drum tracks. During his deposition, Glover conceded that the bass line was "glaringly similar" to the bass line in "Make Up Your Mind" and in the final version of "Unpretty." However, several reasons counsel against granting summary judgment on this basis. First, it is not clear how much of the allegedly infringing elements of the final version of "Unpretty" are contained on the August 5, 1998, MIDI sound files. Glover testified only to the existence of a similar bass line, and it is possible that

other allegedly infringing portions of the song were not recorded until after August 25, 1998. Second, there is a genuine dispute over the dating of the MIDI sound files. The MIDI sound files were recorded onto JAZ disks. In a confusing deposition, the recording engineer arguably testified that the MIDI sound files were directly recorded onto JAZ disks and that the engineer gave the defendants the original JAZ disk onto which the song data was recorded. Tellingly, a computer expert for the defense, Edward M. Stroz, appears to have interpreted the engineer's testimony in precisely this way. In a handwritten amendment to his report, he stated: "I read the sworn deposition of the user Rick Sheppard which stated that the Logic Audio song files were saved to JAZ disks, and only the LogicAudio computer program was stored on the hard drive." The difficulty is that the JAZ disk in question apparently was not manufactured until several months after the MIDI recordings allegedly were made. Further, there is a dispute between the plaintiffs' and defendants' computer experts regarding the ease with which the dating of the MIDI sound files can be manipulated. Taken together, the defendants' sound recordings are insufficient to establish a lack of a genuine issue of material fact regarding whether the allegedly infringing portions of "Unpretty" were all completed prior to August 25, 1998.

This conclusion accords with our usual reluctance to grant summary judgment based on the defendants' claim of independent creation. *See Repp*, 132 F.3d at 891. "[I]ndependent creation is an affirmative defense and may be used to rebut a prima facie case of infringement." *Id.* The plaintiffs, buttressed by a strong showing of probative similarity, have established a prima facie case of access through circumstantial evidence. "Whether the evidence of independent creation here is sufficient

to rebut the prima facie case established in this action is a question for the factfinder, whatever the contours of the burden of establishing the defense." *Id.*

For the foregoing reasons, we VACATE the decision of the district court and REMAND for further proceedings.